UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KYLE RAY HIMES,

              Petitioner,

vs.                            Case No. 3:13-cv-1147-J-39JRK

SECRETARY, DOC, et al.,

              Respondents.

_____

## ORDER

### I.  STATUS

In his September 20, 2013, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1), Petitioner Kyle Ray Himes challenges a 2008 (Nassau County) conviction for robbery.[1]  Although counsel filed the Petition, Petitioner is now proceeding pro se.  He raises three grounds in the Petition.  In his first ground, he claims that he was deprived of his Fifth and Sixth Amendment rights to due process and a fair trial when the trial court denied a motion for continuance, preventing Petitioner from calling his sole alibi witness.

---

[1] Although Petitioner mentions a grand theft conviction, he does not attack that conviction through his claims raised in this Petition.  Petition at 1.

Petition at 5.[2]   In the second ground, Petitioner claims prosecutorial misconduct resulting in a violation of his right to due process of law based on the conduct of the state prosecutor during questioning of a defense witness by assuming in the question that the robbery conviction was a foregone conclusion.  Id. at 7. In the third and final ground of the Petition, Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment based on trial counsel's failure to object to improper prosecutorial comments during closing argument.  Id. at 8. To support the Petition, Petitioner also relies on his Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2254 (Memorandum) (Doc. 2).

In response, Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 13).   Respondents do not calculate that the Petition is untimely filed, but they do contend that Petitioner is not entitled to habeas relief.   Respondents submitted Exhibits (Doc. 13).[3] Petitioner filed his Reply Brief (Reply) (Doc. 14).  See Order (Doc. 6).  The Court will address each ground raised in Himes'

---

[2] With regard to the documents filed with the Court, the Court will reference the page numbers assigned by the electronic filing system.

[3] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page.   Otherwise, the page number on the particular document will be referenced.

Petition.  Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992).  No

evidentiary proceedings are required in this Court.

## II.   STANDARD OF REVIEW

In French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1265

(11th Cir. 2015), cert. denied, French v. Carter, No. 15-6687, 2016

WL 100540 (U.S. Jan. 11, 2016), the Eleventh Circuit reiterated the

appropriate analysis when undertaking habeas review pursuant to the

Antiterrorism and Effective Death Penalty Act (AEDPA):

> review of the state habeas court's decision is
> constrained by § 2254(d) of the Antiterrorism
> and Effective Death Penalty Act of 1996
> ("AEDPA"), which "imposes a highly deferential
> standard for evaluating state court rulings
> and demands that state-court decisions be
> given the benefit of the doubt." Bishop v.
> Warden, GDCP, 726 F.3d 1243, 1253 (11th Cir.
> 2013), cert. denied, --- U.S. ----, 135 S.Ct.
> 67 (2014) (internal quotation omitted).
> Pursuant to the AEDPA, this Court is
> prohibited from granting relief if a state
> court has adjudicated a claim on the merits
> unless the state court's decision "was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U .S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceedings," id. §
> 2254(d)(2).

See Harrington v. Richter, 562 U.S. 86, 98 (2011) (setting forth

the same three exceptions to the bar to relitigation of any claim

adjudicated on the merits in state court).

In Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 703

(11th Cir.) (per curiam), cert. denied, 136 S.Ct. 114 (2015), the

parameters for deferential review under AEDPA are set forth as follows:

> A state-court decision represents an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule from Supreme Court cases but unreasonably applies the established law to the facts of the case. Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003). The Supreme Court has repeatedly emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." Cullen v. Pinholster, ---U.S. ----, ----, 131 S.Ct. 1388, 1411, 179 L.Ed.2d 557 (2011) (quotation marks omitted).

> A state court's determination of the facts is unreasonable only if no fairminded jurist could agree with the determination. Lee v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172, 1192 (11th Cir. 2013), cert. denied, --- U.S. ----, 134 S.Ct. 1542, 188 L.Ed.2d 557 (2014). Findings of fact by a state court are presumed to be correct, and a habeas petitioner must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012). In determining how the state courts resolved a habeas petitioner's claims, we look to the last state court that rendered a judgment in the case. Pope, 680 F.3d at 1284-85.

This Court will analyze Petitioner's claims pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA. Also, in this opinion, the Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and, the Court will apply this presumption to the factual determinations of both trial and

appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III.  PROCEDURAL HISTORY

The Court will provide a rather detailed procedural history in light of the grounds raised in the Petition.  On January 25, 2007, Petitioner was charged by information with robbery.  Ex. C at 7. On June 14, 2007, he waived speedy trial.  Id. at 16.  The defense witness list, filed November 1, 2007, included Samantha Mann, Jamie Gilbreth, and Regina Walker.  Id. at 20.  With a final pre-trial scheduled for December 6, 2007, on December 5, 2007, defense counsel moved for a continuance in order to prepare for trial, including conducting depositions of witnesses that both sides were unable to locate, and to locate additional witnesses and complete depositions for those additional witnesses.  Id. at 22-23.  The trial court, in its January 25, 2008 Trial Order, scheduled a final pretrial for February 28, 2008, and trial for March 10, 2008.  Id. at 24-25.

On February 14, 2008, Petitioner filed a Notice of Filing Original Transcripts of Witnesses.  Id. at 26-27.  The state filed its Statement of Particulars and Demand for Notice of Intention to Claim Alibi.  Id. at 310.  On February 28, 2008, Petitioner filed his First Amended Defense Witness List that again included Regina Walker.  Id. at 311-12.  Also on that date, Petitioner filed his Notice of Alibi, stating that he was at Jaime Gilbreathe's [sic]

house, and that Regina Walker, of that same address, would provide testimony to establish that fact. Id. at 313-314. The state responded by providing its List of Defense Albi Rebuttal Witnesses, including Jamie Gilbreth, Raychel [sic] Gilbreth, Sharon McLendon, Teresa Roberts, Erica Leach, and Detective King. Id. at 318. Depositions of Samantha Manin, Jamie Gilbreth, and Regina Walker were taken on February 28, 2008. Ex. D.

The state filed a Notice of Intent to Classify Defendant as a Prison Release Re-Offender. Ex. C at 315. On March 10, 2008, Petitioner filed a Motion for Continuance seeking more time to locate witness Regina Walker who relocated to Georgia. Id. at 353-54. Defense counsel claims he "was notified by Regina Walker's step-father, Michael Nilio on Sunday, March 9, 2008 at approximately 2:30 p.m." of this relocation. Id. at 353.

On March 10, 2008, Robert Davis, defense counsel, advised the court of the events which prompted the filing of a motion for continuance. He explained:

> Yes, Your Honor, I filed that this morning. I made the State aware that we were told by individuals living in the area of Regina Walker on Friday that she was in the process of moving. We had hired both a processor and an investigator over the weekend. I was contacted by her stepfather Sunday between 3:30, if I'm not mistaken, and 4:00, and he advised us that she has moved to Georgia. He does not have a phone at this time and he's not sure of her address or how to get in touch with her.
>
> She was Mr. Himes' notice of alibi and therein lies the problem. She was aware this

- 6 -

was set for trial this date because when her
depo was done we had an informal conversation
saying that we intended for this to go forward
and we would be needing her, but she was not
under subpoena at that time.  She was placed
under subpoena mid last week and it was posted
at her residence, which her father or
stepfather got, and that's when he contacted
us when he came back into town, and therein
lies the problem, Your Honor.

Other than that, we are prepared and
ready to go.  The State is also ready, and we
have been in very close contact.  Everything
other than Ms. Walker's testimony is ready to
go.

Ex. DD at 5-6.

The court asked Mr. Davis what relief he was seeking.  Id. at

6.  Counsel responded:

Your Honor, based upon the fact that I
don't have my alibi witness available, we
would ask for a continuance to locate her, be
able to get her under subpoena and go [to]
your next available trial date based on the
fact that this has come up at the last minute
unbeknownst to either the State or I.

Id. at 7.

The state opposed the motion for continuance:

The case was set for trial on January 24th of
2008, and today is March 10th, 2008.  It
appears that this witness was attempted to
have been served within only the past week.
Your honor, the deposition was taken, I took –
personally took the deposition of this defense
witness, alibi witness approximately two and-
a-half weeks ago and at that time I believe
there was a conversation with her.  Um, I did
not place her under subpoena.  She was not a
State witness.  Um, and I –– Mr. Davis may
have spoken to her, I believe he did, about
being there, but at that time I don't think
she was under subpoena.

- 7 -

> Um, Your Honor, I took her deposition and
> she stated that the defendant may have been
> with her on that day, but she's not sure if he
> was or wasn't. And at some point in that time
> frame there was a barbecue at her house, but
> she could not be certain that this was the
> particular day and time the defendant was
> there. And I would oppose this motion, Your
> Honor. We have -- the State has subpoenaed
> eight different witnesses to come testify
> today. These witnesses have all been very
> difficult to track down and they have all
> taken time out of their normal schedules to be
> here. We have jurors here prepared to sit on
> this trial and have also taken time out of
> their schedule, and it would be a great burden
> upon the State if we were to have to continue
> this trial and reorganize all these witnesses
> to come testify against the defendant.

Id. at 7-8.

Mr. Davis addressed the relevancy and importance of Ms.

Walker's testimony:

> Um, just in what Mr. Padgett [the
> prosecutor] has said about her testimony. She
> did say that it was her belief that Mr. Himes
> was with her on the date that the bank was
> robbed, at her residence for the barbecue.
> She wasn't sure of the exact date that the
> bank was robbed, but she knows that on the
> date of the robbery Mr. Himes was at her house
> for the barbecue, and also watching videos
> until well after dark, which would be the same
> time the bank was robbed.
>
> **Based on that I would argue to the Court
> that her testimony would be critical and that
> it would have weight before the jury for the
> jury to consider whether or not this is a
> credible alibi witness.** Your Honor, um, we
> attempted several times in the last ten days –
> we made four attempts, um, to try to
> personally serve her, and then that's when it
> was posted and her stepfather contacted us as
> to her unavailability. That was beyond our
> control, Your Honor, which is why we're asking

> for the continuance to bring her or have her
> back before the Court so that she can provide
> testimony.

Id. at 8-9 (emphasis added).

The court inquired as to when the witness subpoena issued. Mr. Davis said the posting was "on Thursday of last week[.]"[4] Id. at 9. He explained that numerous attempts were made "for the ten days prior to that to actually physically serve her in person."[5] Id. The court asked again "when was the subpoena issued for service?" Id. Before receiving a response the court referred to the affidavit of service from C. K. Legal Support dated March 6th. Id. at 10. Mr. Davis explained that a different process server, River City Legal Service (River City), had been unsuccessful, and that is why Mr. Davis sought out the assistance of C. K. Legal Support. Id. He said River City unsuccessfully attempted service "approximately between February 23rd and March 1st[.]"[6] Id. River City told Mr. Davis that the address provided did not exist, but Mr. Davis knew otherwise because the witness appeared at the deposition on Thursday, February 28, 2008, under a prior subpoena

---

[4] The proceeding took place on Monday, March 10, 2008. The phrase "on Thursday of last week" apparently refers to Thursday, March 6, 2008.

[5] Ten days prior to Thursday, March 6, 2008, would be Monday, February 25, 2008. Ten days prior to March 10, 2008, would be Friday, February 29, 2008, the day after the deposition of Regina Walker.

[6] Mr. Davis referenced the period from Saturday, February 23, 2008, through Saturday, March 1, 2008.

- 9 -

for deposition.  _Id_.   When River City's efforts proved unsuccessful, Mr. Davis employed C. K. Legal Support to make another attempt to obtain successful service.  _Id_.   The trial court, after hearing this explanation said: "I'm going to deny the motion for continuance.  The matter has been set for trial for two months and I believe we need to move forward on the matter."  _Id_.

Petitioner proceeded to a jury trial on the robbery charge. Ex. DD.  The jury returned a verdict of guilty as to the charge of robbery.  Ex. C at 405; Ex. DD at 362.  Petitioner filed a Motion for New Trial claiming that he was prejudiced by the denial of a continuance to produce a properly subpoenaed witness.  Ex. C at 406.  The trial court denied the motion on March 19, 2008.  _Id_. at 407.

On April 17, 2008, the trial court conducted a proceeding on a pretrial for a different charge and a sentencing for the robbery conviction.  Ex. Z at 4.  During the course of the proceeding, Mr. Davis advised the court that a short recess was needed to address the matter that "there may have been perjured testimony both during depositions and during the trial[.]" _Id_. at 7.  The court decided to immediately address the issue and put the individual, Raychelle Leanne Gilbreth, on the stand.  _Id_. at 7-8.  Ms. Gilbreth said she was not completely honest during her deposition, but she was honest at trial about everything except the money, revising her testimony and stating she received half of the money.  _Id_. at 9.  Mr. Davis asked Ms. Gilbreth if she was truthful when she said it was all Mr.

Himes' idea.  Id.  She responded that they played equal parts.  Id.
She admitted that she was the one who robbed the bank.  Id. at 9-
10.  When asked if Mr. Himes planned the robbery, she responded she
did not know.  Id. at 10.  Mr. Davis reminded her that during the
trial she said Mr. Himes planned it, wrote the note, and forced her
to participate.  Id.  Ms. Gilbreth testified that Mr. Himes did not
force her to do anything or tell her to go in and do it.  Id.

Ms. Gilbreth stated she held back during the depositions to
protect a friend and herself.  Id. at 11.  She confirmed that she
wrote a letter to a friend, Christopher Ensminger, about lying
during the depositions and withholding information from the
defense.[7]  Id. at 12, 13-14.  On cross, Ms. Gilbreth said her
testimony at trial that Petitioner was a participant in the robbery
and received money was truthful.  Id. at 14.  She reiterated that
Petitioner drove her to the scene of the robbery.  Id. at 14-15.
She stated that other than her retention of half of the money, her
testimony at trial was correct.  Id. at 15.

---

[7] Raychelle Gilbreth's letter to Christopher Ensminger is
dated April 11, 2008.  In the letter, Ms. Gilbreth mentions that
she provided "another version" of what happened at Himes' trial.
Ex. C at 360.  She states that she never wanted to hurt Himes and
hates herself for what she did.  Id.  She admits that she lied in
the depositions.  Id. at 361.  She states "the trial made Kyle
[Himes] looks way worse than it really was[.]" Id. at 362.  She
states that she cried when she saw him in a jumpsuit, and that is
when the "truth hit" and she realized she messed up.  Id. at 363.
She also said that if Himes were to get a retrial due to the
inconsistencies in her "depo's & all," she would not show up.  Id.
She admitted she robbed the bank, "but he was there."  Id. at 362.

In response to her revelation of untruthfulness, the court said:

> Well, Mr. Padgett, one of my concerns is that in this letter Ms. Gilbreth states that as a result of her testimony at trial, and her statement is, yes, the trial made Kyle look very worse than it really was.  I'm not sure that the outcome would be any different, but I think that there has been some showing that there may have been some prejudice.
>
> And I assume, Mr. Davis, you're moving for a new trial.

Id.

Mr. Davis agreed and orally moved for a new trial, and the court granted the motion.  Id. at 16.  The court directed that Ms. Gilbreth be taken into custody and be held for her perjured statements.  Id.  He also directed that no bond be set because she said [in the letter] she would not show up for a re-trial.  Id. The court said to Ms. Gilbreth: "You raise your right hand, you take an oath, you lie under oath, you reap the consequences.  You have made a mockery of this system.  You have wasted the time and resources of this Court."  Id.

On April 21, 2008, the state moved for rehearing asserting the motion for new trial was untimely and various procedural reasons for reversal of the court's decision.  Ex. C at 408-12.  The trial court conducted a hearing on April 24, 2008.  Ex. AA.  At this point, new counsel, Frank Tassone and Rick Sichta, represented Petitioner, and Mr. Sichta stated it was their recommendation to their client that the motion for rehearing was meritorious as the

- 12 -

trial court was divested of jurisdiction when it ordered the new trial, and that there was no objection to the motion in that respect.[8] Id. at 4-5.  The court granted the state's motion for rehearing, vacated the order for new trial, and passed the case for sentencing.  Id. at 4; Ex. C at 413.

On June 12, 2008, the trial court adjudicated Petitioner guilty and sentenced him to fifteen years in prison as a prison release reoffender.  Ex. CC at 11; Ex. C at 443-52.  At that proceeding, Petitioner, through a negotiated plea, pled guilty to grand theft in case number 2007-240 and received a concurrent sentence of thirteen months.  Ex. CC at 8-10.

Petitioner appealed the robbery conviction and sentence.  Ex. C at 462.  In the Statement of Judicial Acts to be Reviewed, two acts are mentioned: error in denying the motion for new trial and error in denying the motion for continuance with respect to the defense procuring an alibi witness for trial.  Id. at 460-61. Petitioner filed an appeal brief, Ex. EE, the state answered, Ex. FF, and Petitioner replied.  Ex. GG.  On May 14, 2009, the First District Court of Appeal affirmed per curiam.  Ex. HH.  The mandate issued on June 1, 2009.  Ex. II.

On April 2, 2010, Petitioner, through counsel Tassone and Sichta, filed a Rule 3.850 Motion for Post Conviction Relief

---

[8] The law firm of Tassone & Sichta, LLC, filed a Notice of Appearance on behalf of Petitioner on April 24, 2008.  Ex. C at 435.

entitled Defendant's Amended [sic] Motion to Vacate Judgments of Conviction and Sentence Under Rule(s) 3.850/3.851 with Special Request for Leave to Amend (First Rule 3.850 Motion).  Ex. KK at 64-96.  The state responded.  Id. at 99-103.  On May 17, 2010, Petitioner filed Defendant's Amended Motion to Vacate Judgments of Conviction and Sentence Under Rule(s) 3.850 (restated) (Second Rule 3.850 Motion).  Id. at 1-51.  The trial court, on May 17, 2010, entered an order denying the First Rule 3.850 Motion.  Id. at 52-53.  The order is file stamped May 21, 2010.  Id. at 52. Petitioner moved for rehearing, seeking a ruling on his Second Rule 3.850 Motion.  Id. at 54-56.  The trial court denied rehearing. Id. at 60.  Petitioner appealed.  Id. at 62.  He filed an appeal brief.  Ex. LL.  The state filed a notice that it would not file an answer brief.  Ex. MM.  The First District Court of Appeal, on September 24, 2010, ordered the state to show cause why the trial court's order should not be reversed and remanded to rule on the Second Rule 3.850 motion.  Ex. NN.  The state conceded that the appellate court should reverse and remand the case.  Ex. OO at 5. On February 11, 2011, the First District Court of Appeal reversed and remanded the case for the lower court to consider and rule on the Second Rule 3.850 Motion.  Ex. PP.  The mandate issued on March 1, 2011.  Ex. QQ.

    In an order filed on March 8, 2011, the trial court, without ordering a response from the state and without attaching records or conducting an evidentiary hearing, denied the Second Rule 3.850

- 14 -

Motion.[9]  Ex. SS at 98-99.  Petitioner moved for rehearing.  Id. at 100-10.  The trial court denied rehearing.  Id. at 111.  Petitioner appealed.  Id. at 16.  Petitioner filed an appeal brief.  Ex. UU. The state filed a notice that it would not file a brief.  Ex. VV. The First District Court of Appeal in its January 30, 2012 Order directed the state to respond.  Ex. WW.  The state responded recommending that the appellate court remand the case to the trial court for attachment of records or to hold an evidentiary hearing. Ex. XX at 4.  On March 14, 2012, the First District Court of Appeal reversed and remanded for the trial court to attach portions of the record or to hold an evidentiary hearing for all claims except the fifth claim.  Ex. YY at 1-2.  The mandate issued on March 30, 2012. Ex. ZZ.

On April 13, 2012, the trial court entered a three-page order denying the Second Rule 3.850 Motion, attaching documents.  Ex. BBB at 108-29.  On May 10, 2012, Finnell, McGuinness, Nezami & Andux, P.A., entered a Notice of Appearance in the trial court.  Id. at 130.  The Finnell firm filed a Notice of Appeal.  Id. at 131.

Four grounds were raised on appeal: (1) the circuit court erred in denying the Rule 3.850 motion without an evidentiary hearing on the ground that defense counsel improperly stipulated to the state's motion for rehearing after the trial court granted a

---

[9] Curiously, the order is dated February 28, 2011, prior to the date of the issuance of the mandate on March 1, 2011.  Ex. SS at 98-99.

new trial when there was no authority for a motion for rehearing;
(2) the circuit court erred in denying the Rule 3.850 motion
without an evidentiary hearing on grounds one and six, the claims
of newly discovered evidence; (3) the circuit court erred in
denying the Giglio claim without an evidentiary hearing; and (4)
the circuit court erred in denying without an evidentiary hearing
the claims of improper arguments by the state attorney and defense
counsel's failure to object to them.  Ex. CCC at i.  The state
filed a notice that it would not file an answer brief.  Ex. DDD.
The First District Court of Appeal affirmed per curiam.  Ex. EEE.
The mandate issued on June 13, 2013.  Ex. FFF.

## IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In ground one, Petitioner claims that he was deprived of his
Fifth and Sixth Amendment rights to due process and a fair trial
when the trial court denied a motion for continuance, preventing
Petitioner from calling his sole alibi witness, Regina Walker.[10]
In the Memorandum, Petitioner urges this Court to find that the
state court's failure to permit a continuance to allow the defense
to locate the sole alibi witness was a decision that was contrary
to or an unreasonable application of Supreme Court precedent,
resulting in the denial of due process of law and a fair trial.

---

[10] Apparently Petitioner is referencing the Fifth Amendment
right to compulsory process and due process of law and the Sixth
Amendment right to defend his case with counsel.

- 16 -

Memorandum at 19. Petitioner primarily relies on three cases to support his first ground: (1) Riggio v. Sec'y, Dep't of Corr., 704 F.Supp.2d 1244, 1253 (M.D. Fla. 2010), noting that a state court's denial of a continuance is reviewed for an abuse of discretion; (2) Lee v. Kemna, 534 U.S. 362, 376-77 (2002), stating that a trial court's failure to grant a continuance may amount to a denial of due process of law and a fair trial; (3) and Ungar v. Sarafite, 376 U.S. 575, 589-90 (1964), recognizing that insisting upon expeditiousness in the face of a justifiable request for delay can emasculate the right to defend with counsel.

In Ungar, the Supreme Court addressed the merits of a claim asserting that a denial of a continuance deprived a petitioner of his right to engage counsel and to properly defend his case. Ungar 376 U.S. at 588-89. In oft-quoted language, the Supreme Court eloquently provided guidance in considering whether a proceeding satisfies due process requirements:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case,

- 17 -

> particularly in the reasons presented to the
> trial judge at the time the request is denied.
> <u>Nilva v. United States</u>, 352 U.S. 385, 77 S.Ct.
> 431, 1 L.Ed.2d 415; <u>Torres v. United States</u>,
> 270 F.2d 252 (C.A.9th Cir.); <u>cf</u>. <u>United States</u>
> <u>v. Arlen</u>, 252 F.2d 491 (C.A.2d Cir.).

<u>Ungar</u>, 376 U.S. at 589-90.

Petitioner also relies on <u>Lee</u>, another Supreme Court decision. In <u>Lee</u>, 534 U.S. at 365, the petitioner claimed that state trial court deprived him of due process of law by refusing to grant him an overnight continuance.  Of import, Lee's sole affirmative defense was an alibi,[11] and he planned to call three witnesses to testify that he was not in the city when the crimes were committed. <u>Id</u>.  Although they were in the courthouse on the third day of the trial, without explanation, the three alibi witnesses were not in attendance later in the day when they were called to testify.  <u>Id</u>. Upon discovering their absence, defense counsel moved for a continuance until the next morning so that he could attempt to locate the witnesses and bring them back to court.  <u>Id</u>.

The trial court denied the motion for continuance stating that it looked like the witnesses abandoned the defendant and that, for the judge's own personal reasons, he could not try the case the next day.  <u>Id</u>. at 365-66.  In addition, the trial court stated that there was another case set for trial the next weekday.  <u>Id</u>. at 366.

---

[11] Also of interest, Remon Lee, the petitioner, was "the alleged getaway driver[.]" <u>Lee</u>, 534 U.S. at 367.

Both the District Court and the Court of Appeals found the due process claim procedurally barred and did not address the merits of the claim.[9]  Id. at 387.  Finding no adequate state-law ground hindered consideration of the due process claim, the Supreme Court remanded the case for consideration on its merits.  Id. at 387.

With regard to the third case relied upon by Petitioner, in Riggio, this Court addressed the matter of denial of a motion to continue a hearing to obtain counsel of choice.  704 F.Supp.2d at 1250-51.  The Court recognized that a high level of deference must be afforded to the state court's decision, and that habeas relief may not be given unless the adjudication on the merits of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Id.  The Court also explained that clearly established federal law consists of the governing legal principles that are set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  Id. at 1251.  The Court also recognized that denial of a continuance may or may not result in a Sixth Amendment violation.  Id

In Riggio, the Court looked to Ungar and Morris v. Slappy, 461 U.S. 1 (1983) (finding a violation of a Sixth Amendment right to

_____

[9] In the District Court, petitioner Lee appended affidavits from his alibi witnesses.  Lee, 534 U.S. at 373.

- 19 -

counsel due to the denial of a motion for continuance and the unavailability of an assigned public defender), and the due process concerns addressed in those decisions.  In doing so, and applying the deferential standard of review "required by both the federal habeas standards and the review of the denial of a motion for continuance," the Court concluded that the state court's decision was contrary to, and involved an unreasonable application of clearly established Federal law.  Riggio, 704 F.Supp.2d at 1252. It also found the trial court abused its discretion in denying the request for continuance.  Id.

The Court noted the following factors.  Riggio requested a short delay of three weeks.  Id.  He had previously requested only one continuance.  Id.  The inconvenience was little and would cause slight disruption of the court's calendar.  Id. at 1252-53.  The petitioner diligently filed his motion, albeit days before the revocation hearing pursuant to the mailbox rule (but filed with the clerk the day before the hearing).  Id. at 1253.  Of importance, this Court found that the trial court disregarded defense counsel's statement that he was not ready to proceed.  Id.  Also, this Court determined that the trial court "failed to consider or discuss any of the factors required by the Supreme Court."  Id.  In sum, the Court found that the trial court "arbitrarily insisted upon expediting" the proceeding by denying the motion for continuance, a decision which constituted an abuse of discretion under the circumstances.  Id.

Petitioner, in his Memorandum, relates that there is striking similarity between his situation and that addressed by the Supreme Court in Lee. Memorandum at 16-17. The similarities are described as the sudden absence of alibi witnesses, impending or active trial proceedings with limited time to address the situation, well-founded motions for continuance properly filed with the trial court, and trial court rulings based on judicial expediency. Id. at 17.

Respondents, in their Response, state that this ground is without merit and is due to be denied. Response at 7. They contend that the decision in Lee does not constitute clearly established Supreme Court precedent because the Supreme Court simply reversed and remanded the case for consideration of the due process claim. Id. at 10.

Respondents also challenge Petitioner's reliance on Ungar, describing Ungar as setting forth "a rather vague rule[.]" Memorandum at 11. Focusing on the asserted vagueness and lack of specificity of the rule in Ungar, the leeway allowed for courts to reach outcomes in case-by case determinations, the discretion of the trial court in making a continuance decision, and the required AEDPA deference, Respondents are adamant that Petitioner cannot, under these circumstances, demonstrate an unreasonable application of clearly established Supreme Court law. Memorandum at 11. Instead, relying on United States v. O'Neill, 767 F.2d 780, 784 (11th Cir. 1985), see Response at 11-12, they assert that

- 21 -

Petitioner cannot show an abuse of discretion (prior due diligence to obtain the presence of the witness, demonstration of substantially favorable testimony by the witness, the availability of the witness and willingness to testify, and material prejudice).

In this regard, the only spoken reason for denial of the motion for continuance by the trial court is that the matter had been set for trial for two months and the court believed it needed to move forward on the matter.  Ex. DD at 10.  Without explicit record support, the state surmises that "the state court reasonably determined that Petitioner failed to meet any of the four required elements[.]" Response at 12.  Upon review, at most, the record demonstrates a disposition by the court that focused on expeditiousness, without relating any analysis or employment of relevant factors to deny the request for continuance.

Petitioner, in his Reply, counters that Respondents have not adequately recognized the result in Lee, in which the Supreme Court made its decision that an adequate due process claim was properly raised, and remanded the case for the express purpose for the district court to address the due process claim. Reply at 7.  "Had the constitutional right not existed, as the Respondent so asserts, the Supreme Court would not have remanded specifically for its consideration."  Id.  As a result, Petitioner submits that Petitioner's right to due process of law was violated when the state court denied the continuance, "which was contrary to or an unreasonable application of clear Supreme Court precedent." Id.

- 22 -

The Court will first address whether there is clearly established Supreme Court law. Respondents apparently take issue with Petitioner's assertion that there is a valid due process claim based on his claim of a denial of a continuance preventing the petitioner from presenting his only alibi witness. Historically, there has been recognition that such a deprivation amounts to a denial of due process of law. In 1981, in Hicks v. Wainwright, 633 F.2d 1146, 1147 (5th Cir. Unit B Jan. 5, 1981),[10] the Fifth Circuit, "[a]lthough mindful of the difficulties which confront state trial judges in managing busy dockets," held that the denial of a continuance prevented the petitioner from presenting the testimony of his only expert witness on his insanity defense, depriving the petitioner of due process of law. Hicks, on direct appeal, claimed a deprivation of due process and the right to present a defense under the Sixth Amendment, and the state appellate court affirmed in a per curiam order without opinion. Id. at 1148. Hicks re-raised the issue in the federal district court. Id.

In addressing the claim of a due process violation alleging the deprivation of the "right to present a crucial defense witness[,]" the Fifth Circuit noted that the ruling of the trial court within its sound discretion on a motion for continuance is not to be disturbed unless there is a showing of an abuse of

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

discretion.  <u>Id</u>.  If the court determines there has been an abuse of discretion, the court must further inquire whether the ruling is "so arbitrary and fundamentally unfair that it violates constitutional principles of due process."  <u>Id</u>. (citations omitted).

In making this determination, the Fifth Circuit quoted the rule set forth in <u>Ungar</u> and found a due process violation based on the denial of a continuance to present critical defense testimony, concluding that the trial court's ruling left the defendant and his counsel with "an empty formality" in defending the case.  <u>Hicks</u>, 633 F.2d at 1148-49 (quoting <u>Ungar v. Sarafite</u>, 376 U.S. at 589). The essential factors for determining whether there had been an abuse of discretion were set forth as follows:

> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.
>
> <u>United States v. Uptain</u>, 531 F.2d [1281] at 1287 [(5th Cir. 1976)] (footnotes omitted).

<u>Hicks</u>, 633 F.2d at 1149.

Recently, this Court discussed the rationale involved in considering a request for a continuance and the guidance provided by <u>Uptain</u>:

> A motion for continuance of a trial date
> is decided on a case-by-base basis in light of
> the circumstances presented, particularly the
> reasons for the continuance presented to the
> Court at the time the request is considered.
> See U.S. v. Fernandez, 553 Fed. Appx. 927, 933
> (11th Cir. 2014). Courts often consider the
> timeliness of the request for continuance; the
> reasons for which the continuance is sought;
> the length of the requested delay; the number
> of continuance previously granted; and the
> general balance of convenience to the Court
> and the parties. The burden rests with the
> party requesting continuance to persuade the
> Court to change the trial date. Additionally,
> to determine adequate time for preparation,
> courts analyze the quantum of time available,
> the likelihood of prejudice from denial, the
> accused's role in shortening the effective
> preparation time, the degree of complexity of
> the case, and the availability of discovery
> from the prosecution. U.S. v. Uptain, 531 F.2d
> 1281, 1286 (11th Cir. 1976).

United States v. Martin, 8:12-CV-205-T-17MAP, 2015 WL 4623711, at

*2 (M.D. Fla. July 31, 2015).

In Hicks, the Fifth Circuit employed the factors set forth in

Uptain and found the expert's testimony not only "critical," but

its absence stripped the defendant of his defense.  Hicks, 633 F.2d

at 1150.  Affirming the district court, the appellate court found

that the district court properly balanced the competing interests

and concluded that the right of the petitioner to present his

witness "outweighed any inconvenience" in delaying the trial.  Id.

The next year, in Dickerson v. Alabama, 667 F.2d 1364, 1366

(11th Cir.), 459 U.S. 878 (1982), the Eleventh Circuit found a

violation of the Sixth and Fourteenth Amendment rights to

compulsory process by the denial of a continuance to obtain the

- 25 -

presence of an alibi witness.  "A court may not . . . refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense." Id. at 1370 (citing Hicks, 633 F.2d 1146) (remaining citation omitted).  The court concluded that the testimony of a credible alibi witness would have been "highly relevant" and distinct from that testimony of friends and relatives, giving an aura of credibility to the alibi defense. As such, the court found the required prejudice.[11] Id. at 1370-71.

There is no question that Petitioner has adequately presented a claim of constitutional dimension.  He must still satisfy two tests: (1) whether he can show an abuse of discretion, and (2) whether the ruling of the trial court in denying the motion for continuance was so arbitrary and fundamentally unfair that it violated the constitutional principle of due process.

The record shows that the defense was diligent in naming Regina Walker as a witness and interviewing her.  The defense provided her name on its witness lists. Ex. C at 20, 311. Defense counsel attended her deposition on February 28, 2008.  Ex. D.  On that same date, defense counsel filed a Notice of Alibi, naming Regina Walker as the sole alibi witness and providing her address.

---

[11]  The nature of the prejudice required is "specific substantial prejudice." Paschal v. Sec'y Dep't of Corr., No. 8:08-cv-1688-T-33TBM, 2009 WL 3790308, at *9 (M.D. Fla. Nov. 9, 2009) (quoting Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1326 (11th Cir. 2002) (citation omitted)).

Ex. C at 313.  Of note, during the deposition, Ms. Walker did not inform the parties of her intention to move to Georgia.  Ex. D.

The next issue to be addressed is the diligence of the defense in procuring Ms. Walker's presence for trial.  The record shows extensive and repeated attempts made to procure Ms. Walker's presence.  Based on defense counsel's responses to the court's inquiries about his efforts to procure her presence, attempts were made to personally serve her on either Monday, February 25, 2008 (ten days prior to Thursday, March 6, 2008), or counsel perhaps meant ten days prior to March 10, 2008, which would have been Friday, February 29, 2008, the day following Ms. Walker's deposition.  Mr. Davis informed the court that he used River City, a process server, from approximately Saturday, February 23, 2008, through Saturday, March 1, 2008, but that proved unsuccessful because the service determined the address provided did not exist. Relating to the court that counsel knew that not to be the case since Ms. Walker was previously served at the address provided for purposes of the deposition, Mr. Davis hired another process server, C. K. Legal Support.  That process server ended up, after attempting to personally serve Ms. Walker, posting service at the stated address on Thursday, March 6, 2008.  On Friday, March 7, 2008, individuals living in the area near her residence, provided information that Ms. Walker was in the process of moving.  Defense counsel hired a processor and an investigator over the weekend in an attempt to locate the witness.  When Ms. Walker's stepfather

returned to town, he contacted defense counsel on Sunday afternoon, March 9, 2008, and informed counsel that Ms. Walker had moved to Georgia.  The trial was scheduled to start the next morning, March 10, 2008.

Next, this Court must ask what was the probability of procuring Ms. Walker's testimony within a reasonable time.  In his request for continuance, counsel asked to be given an opportunity to locate Ms. Walker, to get her under subpoena, and to have the court schedule the trial for the next available trial date.  Based on the record before the Court, defense counsel had just been notified the previous day that Ms. Walker had moved to Georgia. Mr. Davis asked the court to give him an opportunity to locate her and get her under subpoena.  He had previously hired process servers and an investigator to locate her, but she was apparently in the process of moving at that juncture and she had now successfully relocated to Georgia.  Under these circumstances, with the aid of an investigator and armed with the knowledge that the witness had moved to Georgia and was no longer residing in Florida, there was a significant probability of procuring Ms. Walker's testimony within a reasonable time, especially since she still had friends and relatives in the area that may possibly have information concerning her current whereabouts or have contact with her.

The next question to be addressed is the specificity with which the defense is able to describe Ms. Walker's expected

- 28 -

knowledge or testimony.  Mr. Davis informed the court that it was Ms. Walker's belief that Mr. Himes was with her on the date that the bank was robbed.  He explained: "[s]he wasn't sure of the exact date that the bank was robbed, but she knows that on the date of the robbery Mr. Himes was at her house for the barbecue, and also watching videos until well after dark, which would be the same time the bank was robbed."[12]  Ex. DD at 8-9.  Mr. Davis further advised the court that her testimony was "critical."  Id. at 9.

The Court must ask the degree to which Ms. Walker's testimony was expected to be favorable to Mr. Himes and the unique or cumulative nature of the testimony.  Ms. Walker stated that Mr. Himes attended the barbecue at her house and she believed it occurred on Friday, December 8, 2006, or perhaps Saturday, December 9, 2006.  Ex. D at 37.  She knew she had recorded the date on her calendar and stated she may be able to locate her Jax Navy calendar

---

[12] At one point during her deposition Ms. Walker firmly stated Mr. Himes was at her house on the date of the robbery, but upon additional questioning she was unsure of the date.  Ex. D at 40-41.  However, Ms. Walker stated that she had written down the date of the barbecue on her Jax Navy calendar, and she might be able to find the calendar to confirm the actual date of the barbecue.  Id. at 38.  Of import, at trial, Jamie Lee Gilbreth testified that on December 8, 2006, people were hanging out at their house, although he testified that Mr. Himes left the house in the afternoon.  Ex. DD at 98-100.  Erica Leech also testified that there was a party at Jamie Gilbreth and Regina Walker's house on December 8, 2006, and a number of people, including Mr. Himes, attended the party and were watching videos.  Id. at 194-95.  She too testified that Mr. Himes and Raychelle Gilbreth left the house in the afternoon.  Id. at 195-96.  In light of all of this testimony, it is quite apparent that all of those involved described the barbecue/party as taking place at Ms. Walker's house on December 8, 2006, the date of the robbery.

that included the information concerning the date of the barbecue. Id. at 38.

Since Ms. Walker was the sole alibi witness, her testimony was unique.  In her absence, Petitioner took the stand to testify about his attendance at the barbecue, which ultimately resulted in his admission to having fourteen felony convictions.  Ex. DD at 257-59. He had no other alibi witnesses to support his testimony that he attended the party and was in the house at the time of the robbery. Of further significance, Ms. Walker's boyfriend, Jamie Gilbreth, with whom she was living, testified that Mr. Himes was present at the house, but left the house prior to the robbery taking place.[13] Id. at 98-100.  On cross, Mr. Gilbreth admitted that prior to the trial he had contacted Mr. Davis several times stating that he knew Mr. Himes was innocent and did not participate in the case.  Id. at 101-102.  Also of note, Mr. Gilbreth is the brother of the co-defendant bank robber Raychelle Gilbreth.   Of additional significance, prior to Mr. Himes' trial, Mr. Gilbreth was arrested and facing pending unrelated charges, and he testified that he hoped that his testimony favorable to the state in the case would

---

[13] Teresa Roberts, a state's witness, testified that she saw Petitioner driving a green Cavalier car, between 4:30 and 5:00, on December 8, 2006.   Ex. DD at 185.   She admitted on cross examination that when the police asked her who was driving the car, she told them a white male.  Id. at 188.  Thus, she did not name Mr. Himes as the driver in her statement to the police.

cause the state to make a favorable recommendation to the court in his sentencing.  Id. at 102-103.

Raychelle Gilbreth, the co-defendant, also took the stand against Petitioner.  She testified that when Mr. Himes' mother had her bond revoked on a different matter two days after the bank robbery, Ms. Gilbreth denied having any knowledge of the bank robbery.  Id. at 165-66.  Later on, she admitted to robbing the bank, and also implicated Petitioner, once Detective King told her there were ongoing domestic issues and he would go to the State Attorney's Office to help her out if she told them what they needed to know about the bank robbery.[14]  Id. at 166.

The favorable tenor of Ms. Walker's testimony is quite evident.  Unlike Mr. Gilbreth and Ms. Gilbreth, she was not facing

---

[14] Raychelle Gilbreth admitted that she lied in both the trial and her deposition.  Ex. Z.  She was convicted of perjury for her dishonesty in Mr. Himes' case.  See Case no. 08-CF-344.  The court revoked her plea in robbery Case No. 06-CF-1220 based on her perjurious testimony in Himes' case, and she was sentenced to thirty months in jail, running concurrently with her robbery sentence.  Ex. KK at 7 n.2.  See Corrections Offender Network, Inmate    Release    Information    Detail, http://www.dc.state.fl.us/InmateReleases.  Of note, at Himes' trial, Ms. Gilbreth testified that Himes came up with the idea for the robbery, planned the robbery, told her what to wear, wrote the note, drove the car, told her where to meet afterwards, and provided her with a camouflaged hat.  Ex. DD at 151-55.  On April 17, 2008, she initially stated that her trial testimony was honest except with respect to who kept the money, but later on in her testimony, she retracted from that statement.  Ex. Z at 9.  She said the robbery was not just Himes' idea, and that they played equal parts.  Id.  She said she did not know if Himes planned the robbery.  Id. at 10.  She explained that he did not make her rob the bank or force her to rob the bank.  Id.  Finally, she said she withheld information at the deposition.  Id. at 11.

pending criminal charges.  She had no obvious motive to lie or stretch the truth about whether Mr. Himes was at her house on the date and time of the bank robbery.  See Dickerson, 667 F.2d 1364 (error to refuse continuance when necessary to procure credible alibi witness); Hicks, 633 F.2d 1146 (error to deny continuance when needed to procure sole witness in support of only line of defense); Raulerson v. Wainwright, 732 F.2d 803, 811 (11th Cir.) (finding the record clear that counsel made diligent efforts to attempt to find favorable witnesses, but concluding the testimony would have been repetitive), cert. denied, 469 U.S. 966 (1984); United States v. Costello, 760 F.2d 1123, 1126-27 (11th Cir. 1985) (applying the factors set forth in Dickerson, but finding no abuse of discretion in failing to grant a continuance as the witness had not been contacted by the defense, had not agreed to testify on behalf of the defendant, and had not been located; in addition, defense counsel had not described the expected testimony with any specificity nor was there reason to expect favorable testimony from the witness).

Regina Walker's testimony was certainly not cumulative, as she was the sole alibi witness.  She had been deposed, and her testimony proved unique, relevant, and material to the defense. There is clear evidence that defense counsel made diligent and repeated efforts to attempt to find Ms. Walker as he knew her testimony would be quite favorable and not repetitive.

The Court is understanding and mindful of the extreme difficulties confronting state trial judges in controlling and managing very hectic dockets, nevertheless, the Court finds that under these circumstances, applying the relevant factors, the trial court abused its discretion in denying a continuance. The question remains as to whether there was error of constitutional magnitude in the refusal to postpone the trial to allow defense counsel to attempt to locate and subpoena Ms. Walker.

As such, the remaining question is whether the ruling of the trial court in denying the motion for continuance was so arbitrary and fundamentally unfair that it violated the constitutional principles of due process of law. This Court must look for actual prejudice. Sanders v. McDonough, No. 4:07cv206-RH/WCS, 2008 WL 4382802, at *7 (N.D. Fla. Sept. 24, 2008) (citation omitted). In particular, the Court should inquire whether Petitioner's ability to present a defense was impeded to the extent that it affected "the integrity of the guilt determination[.]" Id. (citation omitted). The key question is whether Regina Walker was a critical defense witness.

The Court is convinced that Petitioner has demonstrated specific substantial prejudice because Ms. Walker's testimony was vital to the defense. Petitioner was not able to adduce this favorable testimony through any other witness. Ms. Walker countered the testimony of the state's primary witnesses who had

reason to bend the truth or who were actually convicted of untruthfulness. Several of the state's witnesses had criminal convictions and/or were facing pending criminal charges. After the trial, Raychelle Gilbreth admitted she committed perjury and was convicted of perjury. Mr. Gilbreth, who was facing an unrelated criminal charge when he testified at Himes' trial, admitted at trial that he contacted defense counsel prior to the trial to tell him that Mr. Himes was not involved in the bank robbery, then subsequently changed his story after he was arrested and testified against Mr. Himes. Teresa Roberts admitted that she told the police in her statement that a white male was driving the car. At trial, she testified that Mr. Himes was driving the car and she simply failed to tell the police who was driving the car.

The importance of Ms. Walker's testimony is quite evident, as she offered "the only support for the affirmative defense of alibi." Lee v. Kemna, No. 98-0074-CV-W-HFS, 2004 WL 1575555, at *3 (W.D. Mo. July 8, 2004) (on remand from the United States Supreme Court). In Lee, the district court found not only a due process violation "on the face of things," but prejudice because confidence in the outcome was undermined by the denial of a continuance and the absence of the alibi witnesses. Id. Similarly, in the case at bar, a continuance "was required by due process," and, most significantly, "petitioner had . . . [a] generally credible [witness] for an alibi defense." Id. at *6.

Petitioner has another hurdle.  This Court must determine whether the First District Court of Appeal's decision to reject the continuance claim was contrary to,[15] or involved an unreasonable application of clearly established Federal law.  28 U .S.C. § 2254(d)(1); Memorandum at 19.  This Court is mindful that it must apply the deferential standard of review required by AEDPA and the requirements for review of a denial of a motion for continuance. Even doing so, the Court finds that the state court's decision was contrary to, and involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court.  See Riggio, 704 F.Supp.2d at 1252 (finding abuse of discretion in denying a request for continuance, and denial of the Sixth Amendment and due process of law).

The trial court failed to give due consideration to the salient factors in addressing the motion for continuance.  Instead, the court, evincing a narrow focus, denied the motion to avoid any delay in the proceedings.  Thus, the First District Court of Appeal's decision to affirm was contrary to actual Supreme Court decisions.  Cf. Holloman v. Allen, No. 3:06cv786-MHT, 2009 WL 3379082, at *7, *9 (M.D. Ala. Oct. 19, 2009) (Recommendation of the

---

[15] "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." Riggio, 704 F.Supp.2d at 1251 (citations omitted).

Magistrate Judge, adopted by the District Judge) (the trial court considered the salient factors: the granting of a previous motion for continuance, the hostility of the witness, no confidence that the witness would actually participate, the conclusion that his testimony was unnecessary and immaterial for the defense and may be inculpatory).   In Himes' case, there had been one previous continuance, the witness had been deposed and was not hostile, she had willingly testified at the deposition, and the content of her testimony was certainly material and constituted the sole, critical, alibi testimony for the defense.   In sum, her testimony was both relevant and material to the defense.       The state court decision was an unreasonable application of clearly established Federal law.   Here, Petitioner presented material evidence that Ms. Walker would testify in his favor and would directly counter the testimony of the state's witnesses.  Her sworn deposition was evidence that supported the contention that her testimony would be favorable and exculpatory to the defense.   The record shows that defense counsel exercised due diligence in attempting to locate and procure the presence of Ms. Walker for trial.  Also, defense counsel provided sufficient information that demonstrated there was a reasonable probability that Ms. Walker could be located as counsel had just been advised that she had moved to Georgia, and there was no evidence that Ms. Walker would

change her purported favorable testimony if the trial court granted a continuance.

Under these circumstances, the state court decision is not objectively reasonable.  <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000).  The request for a continuance amounted to a short delay, to the next available trial date.  Petitioner only made one previous request for a continuance.  Although there may have been some inconvenience to those involved if a continuance had been granted, the alternative was for the defense to go be forced to go to trial without its critical alibi witness.

The record demonstrates evidence of "a myopic insistence upon expeditiousness in the face of a justifiable request for delay" which resulted in the Petitioner proceeding to trial without a critical alibi witness.  <u>Ungar</u>, 376 U.S. at 849.  The trial court's decision, as presented in the record, was based on the fact that the case had been set for trial for two months and the court believed it needed to expedite matters.  Ex. DD at 10.  Although there is no mechanical test for deciding whether this denial of a motion for continuance is so arbitrary as to violate due process, under the circumstances presented in this case, it is quite evident that Regina Walker's testimony was both significant and crucial to the defense.  In balancing the competing interests, Petitioner's right to present his alibi witness "outweighed any inconvenience"

that would have resulted in granting a continuance.[16]   Hicks, 633 F.2d at 1150.   It would not be objectively reasonable to conclude the state trial court was within its discretion to deny the continuance under these circumstances.   In this instance, the silent affirmance of the trial court's denial of Himes' request for a continuance was both contrary to and an unreasonable application of Supreme Court precedent.   Ground one of the Petition is due to be granted.

## B.  Ground Two

In the second ground of the Petition, Petitioner raises a claim of prosecutorial misconduct and a violation of his right to due process of law based on the conduct of the state prosecutor during questioning of a defense witness by assuming in the question that the robbery conviction was a foregone conclusion.

The Supreme Court addressed whether remarks constituted a denial of due process in Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012):

> The "clearly established Federal law" relevant here is our decision in Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id., at 181, 106 S.Ct. 2464 (quoting Donnelly v.

---

[16] There was no showing of great inconvenience by the state, as Petitioner's counsel asked for the next available trial date.

<u>DeChristoforo</u>, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

The questions/remarks at issue concerned the cross examination of a defense witness, Samantha Manin.  Ms. Manin testified that she is a sergeant employed with the Florida Department of Corrections (DOC) in Miami, Florida.  Ex. DD at 249.  She further attested that she is engaged to Mr. Himes.  <u>Id</u>. at 250.  On cross, the state asked her to state her exact position with the DOC.  <u>Id</u>. at 254. She responded, "I'm a sergeant." <u>Id</u>.  The following transpired:

> Q    You are a sergeant?  You have to agree that **it's pretty embarrassing for a sergeant with the DOC to be dating someone convicted of a robbery**; wouldn't you?
>
> A    No.
>
> Q    No?  So you wouldn't be embarrassed of dating somebody, as a law enforcement officer, **a sergeant with the Department of Corrections dating somebody who is convicted of robbery**?
>
> MR. DAVIS:    Your Honor, I'm going to object.  It's assuming that my client has already been convicted of a robbery here in this case.
>
> MR. BIEHL [the prosecutor]:    That's the trial he's facing, Your Honor.
>
> THE COURT:    Pardon me?
>
> MR. BIEHL:    Your Honor, he's on trial for that charge.
>
> THE COURT: I overrule the objection.  I think she's already answered it.
>
> MR. BIEHL: Yes, sir.

<u>Id</u>. at 254-55 (emphasis added).

Although Petitioner had a criminal record, he had not previously been convicted of robbery.[17]  The objection was not sustained, and no curative instruction was given by the trial court.

Petitioner raised his claim on direct appeal, Ex. EE, and the First District Court of Appeal affirmed per curiam.  Ex. HH.  Thus, the claim is adequately exhausted and properly before the Court.

The Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications.  After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Petitioner is not entitled to habeas relief on ground two.

The prosecutor explained that he was referring to the trial Petitioner was facing, not some prior conviction.  To the extent the question suggested that a robbery conviction was a foregone conclusion, this isolated comment did not deprive Petitioner of a fair trial.

---

[17]  See Corrections Offender Network, Inmate Population Information Detail, http://www.dc.state.fl.us/ActiveInmates/detail.

In its instructions, the Court told the jury that Mr. Himes had been charged with robbery. Ex. DD at 75. He advised the jury that its verdict must be based solely on the evidence, or lack of evidence, and the law. Id. He reminded them that what the lawyers say is not evidence. Id. at 76. In its final instructions, the court stated that Mr. Himes had been accused of the crime of robbery. Id. at 346. The court provided the jury with the elements of the crime, the burden of proof, and the principal instruction. Id. at 346-52. The court reminded the jury: "[i]t is to the evidence introduced in this trial, and to it alone, that you are to look for that proof." Id. at 352.

Since jurors are presumed to follow the instructions of the trial court, and the trial court instructed the jury that the attorneys were not witnesses in the case and what they say is not evidence, the prosecutor's questions/remarks were not evidence. Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001), cert. denied, 534 U.S. 1085 (2002). An Eleventh Circuit case provides some guidance when the questionable remark is contained in a question raised by the prosecutor:

> Powers also argues that the court's comments when ruling on that matter so prejudiced him that the court should have granted a mistrial. Even improper comments by a judge warrant reversal only if they had such a prejudicial effect on the jury that they denied the defendant a fair trial. United States v. Tampas, 493 F.3d 1291, 1303 (11th Cir. 2007). The comments that Powers complains about could not have had any effect on the

jury because they were made outside its
presence. Although the court did ask Powers'
attorney in the presence of the jury about the
relevance of his line of questioning, that was
an entirely proper question and could not have
unfairly prejudiced the jury. See Tampas, 493
F.3d at 1303 ("[T]he brief question to defense
counsel in the context of an evidentiary
objection had no clear effect on the jury.").
And, as we have mentioned before, the court
instructed the jury to disregard any comments
by it or the attorneys.

Powers also contends that he was
prejudiced by three statements or comments one
of the prosecutors made at the trial: **a
question about Powers being terminated from
his job at First Realty Mortgage**; the
prosecutor's statement to the court about a
question she wanted to ask a witness about
Powers' income; and the prosecutor's mention
of evidence related to a dismissed count
during closing arguments. "Prosecutorial
misconduct requires a new trial only if we
find the remarks (1) were improper and (2)
prejudiced the defendant's substantive rights.
In order to assess the prejudicial impact of a
prosecutor's statements, we must evaluate them
in the context of the trial as a whole and
assess their probable impact on the jury."
United States v. Hernandez, 145 F.3d 1433,
1438 (11th Cir. 1998). For a prosecutor's
prejudicial comments to affect a defendant's
substantial rights, there must be a reasonable
probability that, but for the remarks, the
outcome would have been different. United
States v. Hall, 47 F.3d 1091, 1098 (11th Cir.
1995).

Considering the pile of evidence proving
the prosecutor's case against Powers, **even if
we were to assume that her remarks or
questions were improper**, Powers has not
demonstrated that his substantial rights were
prejudiced, **particularly in light of the
court's instructions to the jury to disregard
any comments made by the attorneys during the
trial**. See Hall, 47 F.3d at 1098.

United States v. Hill, 643 F.3d 807, 849 (11th Cir. 2011) (emphasis added), cert. denied, 132 S.Ct. 1988 (2012).

After reviewing the record, viewing the questions/remarks in the context of the trial as a whole, and assessing the probable impact on the jury, the Court is convinced that the prosecutor's questions/remarks did not result in a due process violation. Ground two is due to be denied.

## C.  Ground Three

In the third and final ground of the Petition, Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment based on trial counsel's failure to object to improper prosecutorial comments during closing argument.  Thus, he claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

To prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  With respect to the two-pronged test, the Eleventh Circuit thoroughly explained

what must be shown to meet both the deficient performance and prejudice prongs:

> Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 687–89, 104 S.Ct. at 2064–65. This requires a showing of "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quotation marks omitted). When a claim implicates both AEDPA and Strickland's highly deferential standards, our review is "doubly" deferential. Id. at 105, 131 S.Ct. at 788.

> In evaluating counsel's effectiveness, we are guided by several considerations: (1) a strong presumption exists that counsel's performance might be considered sound trial strategy; (2) strategic choices made after a thorough investigation are virtually unchallengeable, and (3) those strategic choices made after less than complete investigation are reasonable to the extent that reasonable professional judgments support the limitations on investigation. Strickland, 466 U.S. at 689–91, 104 S.Ct. at 2065–66. We must not only give counsel the benefit of the doubt, but must also "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as he did." Pinholster, 131 S.Ct. at 1407 (internal quotation marks omitted).

> Prejudice is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The likelihood of a different result must be substantial, not just conceivable. Richter, 562 U.S. at 111–12, 131 S.Ct. at 792. The petitioner bears the burden of proof on both prongs of an ineffective-assistance claim. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).

<u>Stoddard</u>, 600 F. App'x at 706-707.

First, Petitioner claims there was a violation of the Golden
Rule during closing arguments.   The prosecutor, during closing
argument, made the following remarks:

> Well, Shali Geiger took the stand and told you
> she was afraid.  **Anybody would be afraid if
> they are working at a bank** with no partition
> between them if somebody put a note up that
> said, If you don't give me the money, you will
> die, or if [you] put a dye pack, you will the
> [sic] die.   Give me all the money.   She
> testified that she was in fear.

Ex. DD at 308 (emphasis added).

Petitioner argues that the prosecutor, by his remarks,
intended for the jurors to imagine themselves in the position of
the bank teller, a violation of the Golden Rule.  Memorandum at 27.
Petitioner, in his post conviction motion, claimed that his trial
counsel was ineffective for failure to object to prosecutorial
misconduct.   The court found that the above-mentioned remarks did
not violate the Golden Rule and denied the post conviction motion.[18]
Ex. BBB at 110.   The First District Court of Appeal affirmed per
curiam.   Ex. EEE.   Since the trial court denied post conviction
relief   and   the   First   District   Court   of   Appeal   affirmed,

_____

[18] Assuming arguendo there was a Golden Rule violation,
Petitioner has not shown prejudice to his substantial rights based
on this isolated remark invoking some appeal to the jury by using
the term "anybody."   The remark was "not interrelated or an
extension of impermissible comments earlier in the proceeding[,]"
<u>United States v. Hope</u>, 608 F. App'x 831, 841 (11th Cir. 2015);
therefore, its negative impact was very limited or insignificant.

Petitioner's claim was adjudicated on its merits and the state's court's adjudication of this ground is entitled to AEDPA deference.

Attorneys are permitted wide latitude in their closing arguments. Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009) (finding the Georgia court reasonably applied Strickland in denying a claim of ineffective assistance of counsel because the petitioner did not establish the action of counsel (failing to move for a mistrial based on prosecutorial misconduct) outside the wide range of reasonable professional assistance), cert. denied, 562 U.S. 1145 (2011). However, attorneys should not make "[i]mproper suggestions, insinuations, or assertions" that are intended to mislead the jury or appeal to passions or prejudices during closing arguments. United States v. Hope, 608 F. App'x 831, 840 (11th Cir. 2015) (per curiam).

Here, defense counsel was not ineffective for failure to object to the remark. The prosecutor's remark did not invite the jurors to place themselves in the position of the bank teller. Instead, the comment, read in context, emphasized the testimony of the bank teller that she was placed in fear during the course of the robbery.

On this record, Petitioner has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance for failing to object to this statement. Even assuming deficient performance by his counsel,

Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had objected or moved for a mistrial based on the prosecutor's alleged improper comment. Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

Petitioner also asserts that his counsel was ineffective for failing to object to additional statements in closing argument. Petitioner complains this his counsel should have objected based on the prosecutor's improper vouching of Raychelle Gilbreth and based on the prosecutor giving his personal opinion as to Ms. Gilbreth's credibility.[19]

In closing argument, the prosecutor said:

> She testified to all of this firsthand knowledge and even admitted her own guilt in doing so.  This testimony should be -- you should really consider the fact that she is admitting her own guilt while she's testifying and telling everything.  Um, **she really has no reason to alter the truth in this particular case.  She's been forthcoming with you.**
>
> How do we know that she's telling the truth about what happened?  Well there is several things you can do.  You can -- and Judge Foster will instruct you, you can consider her demeanor on the stand, her willingness to answer questions, the details or any accuracy of her memory.  And you recall, I mean, it's going to be up to you to

---

[19] Of course in hindsight, the prosecutor's statements seem rather foolhardy in light of the fact that Ms. Gilbreth now stands convicted of perjury.

> get together and talk about it.   And think
> about, how was she on the stand?   **She seemed**
> **pretty believable.**

Ex. DD at 314-15 (emphasis added).

The trial court, in addressing the claim of ineffective

assistance of counsel, rejected the claim and said:

> The first component of misconduct alleged by
> Defendant is the multiple occurrences of
> impermissible vouching of witness credibility
> during the State's closing argument.   The
> record does not support impermissible vouching
> of witness credibility by the State.   The
> State instead attempts to anticipate possible
> attacks on the credibility of the witnesses
> and show that the evidence does not support
> these potential attacks.   For example,
> Defendant argues it was inappropriate for the
> State to say, "And think about it, how was she
> on the stand?  She seemed pretty believable."
> (Record on Appeal, Attached hereto as Exhibit
> 3).   The State's request that the jury
> consider demeanor, sureness, and
> trustworthiness is not impermissible.   The
> State is merely requesting that the jury
> resist any attempted attacks on her
> credibility because these signs indicated she
> was telling the truth.

Ex. BBB at 110.

The court denied the ineffectiveness claim, and the First

District Court of Appeal affirmed.   In light of the trial court's

conclusion that there was no violation of the Golden Rule and there

was no improper vouching of the state's witness, any objection

defense counsel would have made would have been overruled by the

trial court.   Petitioner has failed to carry his burden of showing

that his counsel's representation fell outside the wide range of

reasonably professional assistance.    Even assuming deficiency,

Petitioner has not shown prejudice.

The record fully supports the trial court's conclusion.

Recognizing the wide latitude regularly allowed for closing

arguments, and viewing the remarks in the context of the trial as

a whole, and assessing their probable impact on the jury, the Court

is convinced that these comments made during closing argument did

not result in a due process violation.[20]   Furthermore, Petitioner

has not shown that a reasonable probability exists that the outcome

of the case would have been different if counsel has objected and

moved for a mistrial based on these additional comments.

With regard to the claim of ineffective assistance of trial

counsel, upon due consideration, there was no unreasonable

application of clearly established law in the state court's

decision to reject the Strickland ineffectiveness claim.    Also, the

decision to deny this ground was not contrary to clearly

established federal law and was not based on an unreasonable

determination of the facts.    Finally, Petitioner failed to show

deficient performance nor resulting prejudice based on the

---

[20] Reversal is warranted only when improper comments by the
prosecutor so infect the trial with unfairness as to make the
conviction a denial of due process.    See Darden v. Wainwright, 477
U.S. 168, 181 (1986) (citation omitted); Reese v. Sec'y, Fla. Dep't
of Corr., 675 F.3d 1277, 1291 (11th Cir.) (citation omitted), cert.
denied, 133 S.Ct. 322 (2012).

performance of his defense counsel.  Thus, he is not entitled to
habeas relief on ground three of the Petition.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. 1) is **conditionally GRANTED with
respect to ground one**, and **DENIED** in all other respects.

2.  Petitioner's robbery conviction is **VACATED**, and
Respondents are directed to forthwith take all action necessary to
ensure that the state trial court is apprised of this ruling, that
trial counsel is appointed to represent Petitioner Himes, and that
a new trial (or other appropriate disposition) is ordered in an
expeditious fashion.

3.  The **Clerk** shall enter judgment accordingly and close this
case.

4.  The **Clerk** shall send a copy of this Order to the Circuit
Court, Fourth Judicial Circuit, in and for Nassau County, Florida.

5.  If Petitioner appeals the denial of his Petition in
pertinent part, **the Court denies a certificate of appealability.**[21]

---

[21] This Court should issue a certificate of appealability only
if a petitioner makes "a substantial showing of the denial of a
constitutional right."   28 U.S.C. § 2253(c)(2).   To make this
substantial showing, Petitioner "must demonstrate that reasonable
jurists would find the district court's assessment of the
constitutional claims debatable or wrong," Tennard v. Dretke, 542
U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484
(2000)), or that "the issues presented were 'adequate to deserve
encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S.
322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893
n.4 (1983)).   Upon due consideration, this Court concludes that a

Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of February, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 1/26
c:
Kyle Ray Himes
Counsel of Record

---

certificate of appealability is not warranted for the grounds of the Petition that have been denied by this Court.